UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
PEDRO IRIZARRY,

                Petitioner,

     -against-

WILLIAM F. KEYSER,

               Respondent.
----------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM AND ORDER**
17-CV-6453 (JMA)

**FILED**
**CLERK**
2:31 pm, Aug 31, 2021
**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**APPEARANCES:**

Pedro Irizarry
07-A-0897
Sullivan Correction Facility
P.O. Box 116
Fallsburg, NY 12733
    *Pro Se Petitioner*

Sholom Joseph Twersky
Kings County District Attorney's Office
Renaissance Plaza at 350 Jay Street
Brooklyn, NY 11201
    *Attorney for Respondent*

**AZRACK, United States District Judge:**

Pro se petitioner Pedro Irizarry ("Petitioner") seeks habeas corpus relief from his state court convictions pursuant to 28 U.S.C. § 2254. Because his claims are untimely and equitable tolling does not apply, the petition is **DENIED**. In addition, even if equitable tolling did apply, the Court would still deny the petition because it is procedurally barred and fails on the merits.

### I.  BACKGROUND

    **A. Factual Background**

On December 14, 2005, Petitioner met his second cousin, Carmen Valentine, in a public housing building. (Tr. 79-80.)[1] Ms. Valentine was accompanied by a friend, Mark White. (Id.)

---

[1] "Tr." refers to the trial transcript, People v. Irizarry Trial Tr., Jan. 9-11, 2007, ECF. No. 9.

Subsequently, Petitioner and Ms. Valentine began fighting, and Mr. White attempted to intervene. (Id.) Ultimately, the police were called and found the three "piled on top of one another" at the bottom of a stairwell. (Tr. 20.) Ms. Valentine testified that during the scuffle, Petitioner stabbed her in the knee and Mr. White in the chest. (Tr. 76.) When questioned by the police, Mr. White, while on the ground "soaked" in blood and "heavily" breathing, pointed at Petitioner and stated that Petitioner had stabbed him. (Tr. 25-26.) According to the testimony of the responding officer, upon hearing this, Petitioner responded, "Yeah. I fucking stabbed him. So what?" (Tr. 27.) Mr. White died of his injuries shortly thereafter.

Petitioner was charged with murder in the second degree (N.Y.P.L. § 125.25[1]), manslaughter in the first degree (N.Y.P.L. § 125.20[1]), assault in the second degree (N.Y.P.L. § 120.05[2]), and criminal possession of a weapon in the fourth degree (N.Y.P.L. § 265.01[2]).

**B. Procedural History**

On January 11, 2017, a jury convicted Petitioner of murder in the second degree and assault in the second degree. (Tr. 260.) He was sentenced to concurrent terms of imprisonment of eighteen years to life on the murder count and three years on the assault count, in addition to three years of post-release supervision. (People v. Irizarry, Sent. Tr., Feb. 1, 2007, Tr. 8, ECF No. 9.)

On direct appeal, the Second Department affirmed his judgment of conviction on October 25, 2011. People v. Irizarry, 88 AD3d 1013 (2d Dep't 2011). The Court of Appeals then denied his request for review on February 23, 2012. People v. Irizarry, 18 N.Y.3d 925 (2012). Subsequently, in papers dated August 16, 2016, Petitioner moved pro se to vacate his judgment of conviction pursuant to CPL § 440.10. (ECF No. 1 at 63.) The trial court rejected his motion in an order dated December 15, 2016. (ECF No. 9-7.) The record does not reflect that Petitioner sought to appeal the denial of his 440 motion. (ECF No. 9.)

On October 31, 2017, Petitioner filed the instant habeas petition to challenge his conviction. (ECF No. 1.) He lists two grounds for relief: (1) "See Exhibit A-pg 9-20" and (2) "See Exhibit B." (Id. at 5-6.)

Exhibit A is the brief Petitioner's appellate counsel filed on direct appeal in the Appellate Division, Second Department in April 2011. On pages 9-20, Petitioner argued that the trial court's refusal to submit second degree manslaughter to the jury as a lesser included offense of second-degree murder was not harmless error. (Id. at 47-58.)

Exhibit B is Petitioner's pro se 440 motion submitted to the trial court in August 2016. In it, he argued that his trial counsel was ineffective for entering a stipulation regarding a DNA report and for failing to object to how the court purportedly handled a note received from the jury during deliberations. (Id. at 61-78.)

In the petition, Petitioner concedes that his petition is untimely, but he argues that equitable tolling should apply because of his low IQ, mental health issues, and limited education and literacy. (ECF No. 1 at 4.) After the petition was filed, Judge DeArcy Hall entered an Order directing Respondent to "file a limited answer to the petition, addressing the timeliness of the petition under 28 U.S.C. § 2244(d)." (ECF No. 4.) In response, Respondent's submission argues for dismissal of the petition because Petitioner's situation does not constitute a rare or exceptional circumstance in which equitable tolling should apply. (ECF No. 6 at 2.)

By Electronic Order dated July 7, 2021, the petition was reassigned to the undersigned. Subsequently, the undersigned directed Respondent to file the state court record. (See docket entry, 08/04/2021.)

For the reasons set forth below, the Court **GRANTS** Respondent's motion to dismiss the petition.

## II.     DISCUSSION

As an initial matter, the Court is mindful that a "pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation omitted).  Even though the Court has construed Petitioner's submissions liberally "to raise the strongest arguments that they suggest," Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006), the Court nevertheless dismisses the petition, as explained in more detail below.

### A.     The Petition is Time Barred

Because the petition was filed nearly five years late and equitable tolling does not apply, it must be dismissed.

#### 1. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides for a one-year statute of limitations during which a person in custody pursuant to a state court conviction can file a petition for a writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  The limitations period runs from the latest of four triggering dates, including "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  A judgment of conviction is "final" upon completion of a defendant's direct appeal in a state's highest court and either completion of proceedings before the United States Supreme Court if the petitioner chooses to file for a writ of certiorari, or the expiration of the ninety-day period during which direct review from the Supreme Court is available by seeking certiorari.  See Saunders v. Senkowski, 587 F.3d 543, 547 (2d Cir. 2009) (citing Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001)); Jamison v. Auburn Corr. Facility, No. 10-CV-3440, 2015 WL 8770079, at *4 (E.D.N.Y. Dec. 14, 2015).

The Court of Appeals denied Petitioner's application for permission to appeal the Appellate Division's decision on his direct appeal. Therefore, his conviction became "final" for purposes of AEDPA ninety days later on May 23, 2012, when the time available for him to seek certiorari from the Supreme Court expired. See Valverde v. Stinson, 224 F.3d 129, 132 (2d Cir. 2000); see also 28 U.S.C. § 2244(d)(1)(A); U.S. Sup. Ct. Rule 13(1). Although he had one year to file a timely habeas petition, Petitioner did not file the instant petition with this Court until October 31, 2017—nearly five years later.[2] Petitioner concedes that his petition was not submitted within the applicable statute of limitations and the only way to save it is through application of the doctrine of equitable tolling. (ECF No. 1 at 15-17.)

**2. Equitable Tolling**

Pursuant to AEDPA, equitable tolling is available only if a Petitioner "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (internal quotation omitted). As the Second Circuit has explained, the limitations period will only be tolled in rare and exceptional circumstances where a petitioner "demonstrate[s] a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000). The Second Circuit has defined extraordinary to describe "how

---

[2] Petitioner also filed a motion to vacate his conviction pursuant to N.Y.C.P.L. § 440.10, dated August 15, 2016, (ECF No. 1 at 63)—long after the statute of limitations lapsed. The trial court denied this motion on December 15, 2016. (Id. at 80.) Ordinarily, the statute of limitations for a petitioner's federal habeas claims will be tolled while a properly-filed 440 motion is pending, until the conclusion of the state court proceedings. See 28 U.S.C. § 2244(d)(2); see also Saunders v. Senkowski, 587 F.3d 543, 548 (2d Cir. 2009). Even taking into account the 440-motion filed in the trial court, Petitioner's habeas claims are untimely.

severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period." Diaz v. Kelly, 515 F.3d 149, 154 (2d Cir. 2008).

Petitioner argues that equitable tolling is warranted because of his "significant mental retardation and intellectual deficits," including his IQ, which is under 63, and his sixth-grade reading comprehension level. (ECF No. 8 at 2.) He claims that he prepared his petition with the assistance of "an inmate law clerk in the law library, assigned specifically to provide legal assistance and legal services for sensorially and other inmates with disabilities." (Id. at 1.)

In evaluating Petitioner's request for equitable tolling, the Court is guided by the Second Circuit's instruction that "mental illness does not toll a filing deadline per se; determining whether equitable tolling is warranted in a given situation is a 'highly case-specific inquiry.'" Bolarinwa v. Williams, 593 F.3d 226, 232 (2d Cir. 2010) (quoting Brown v. Parkchester S. Condominiums, 287 F.3d 58, 60 (2d Cir. 2002)). Petitioner must demonstrate that he is entitled to equitable tolling based on his mental illness by making a "particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights." Id. (citing Boos v. Runyon, 201 F.3d 178, 184 (2d Cir. 2000)). Specifically, he must show that his mental illness itself "caused him to miss the original filing deadline." Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011).

Petitioner has not sustained his burden. Though the Court recognizes Petitioner's mental limitations, for which he has submitted credible evidentiary support, he has not demonstrated "a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing." Sanchez v. United States, No. 10-CR-392-16, 2021 WL 2481836, at *2 (S.D.N.Y. June 17, 2021). Specifically, Petitioner has not explained with any particularity how his condition prevented him from pursuing his rights for nearly five years after his conviction became final. His conclusory and generalized allegations

cannot support equitable tolling, particularly when the record shows that in the past, Petitioner diligently pursued relief in state court through pro se filings, including his 440 motion filed during the time period in question between his conviction becoming final and the filing of his habeas petition. In his pro se filings, Petitioner recounts that he prepared them with the assistance of the law library at his facility. (ECF No. 8 at 1.) He has not explained why he lacked this ability to work with the law library during the time period before he ultimately filed his petition.

Finally, Petitioner has not demonstrated that he "acted with reasonable diligence throughout the period he seeks to toll." Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000). Given the many years that have passed since his conviction became final, he bears a particularly high burden. See, e.g., Mateos v. West, 357 F. Supp. 2d 572, 577 (E.D.N.Y. 2005) ("[A]s the petitioner seeks to equitably toll 1,318 days of the limitations period, the petitioner's burden to demonstrate he acted with reasonable diligence throughout this entire period is particularly high."). Here, Petitioner has made no showing of diligence during the relevant time period.

Based on the foregoing, Petitioner has failed to demonstrate both the diligent pursuit of his rights and the extraordinary circumstances that could warrant excusal of his failure to file his petition within the one-year limitations period. Accordingly, the Court dismisses his petition as time-barred and grants the motion to dismiss.

**B. The Petition is also Procedurally Barred and Fails on the Merits**

Even if equitable tolling applied, the Court would still dismiss the petition because it is procedurally barred and fails on the merits.

**1. Procedural Default**

A federal court cannot review a habeas petition "when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman v. Thompson, 501 U.S.

7

722, 729 (1991)). For this reason, under the doctrine of procedural default, a federal court will not review "the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule." Martinez v. Ryan, 566 U.S. 1, 9 (2012). This procedural bar applies even if the state court addressed a claim's merits in the alternative, but decided that claim on independent procedural grounds. Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990) (per curiam); see also Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) (observing that "a state court need not fear reaching the merits of a federal claim in an alternative holding" where the court explicitly invokes a procedural rule as an independent ground for its decision) (emphasis in original). When a state court has dismissed a claim based on a state procedural rule, the petitioner is procedurally barred from raising that claim in a § 2254 petition unless the petitioner can meet certain exceptions discussed below.

To overcome a procedural bar a petitioner must show either (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law" or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. To demonstrate cause, a petitioner must assert that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule": for example, that the factual or legal basis for a claim was not reasonably available to counsel or that "some interference by officials . . . made compliance impracticable." Murray v. Carrier, 477 U.S. 478, 488 (1986) (internal quotation marks and citations omitted). A petitioner may also satisfy the cause requirement by demonstrating that his attorney's failure to comply with state procedural rules denied him constitutionally adequate representation. See Tavarez v. Larkin, 814 F.3d 644, 650 (2d Cir. 2016); Restrepo v. Kelly, 178 F.3d 634, 640 (2d Cir. 1999).

As for the prejudice requirement, the petitioner must demonstrate that counsel's errors (or any other basis invoked by the petition to establish cause) not only "created a possibility of

prejudice, but that they worked to his <u>actual</u> and substantial disadvantage . . ." <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982) (emphasis in original).

Even if a petitioner cannot establish cause and prejudice, a federal court may excuse a petitioner's procedural default if he can show that a fundamental miscarriage of justice would result. For example, a petitioner can overcome a procedural bar by showing "that he is actually innocent of the crime for which he has been convicted." <u>Dunham v. Travis</u>, 313 F.3d 724, 730 (2d Cir. 2002) (citing <u>Schlup v. Delo</u>, 513 U.S. 298, 321 (1995)). To prevail, the petitioner must put forth "new reliable evidence . . . that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." <u>Schlup</u>, 513 U.S. at 324.

Finally, it must be noted that "[t]he concepts of procedural bar and exhaustion often interact in an important way." <u>Dominguez v. Rock</u>, No. 12-CV-3269, 2016 WL 542120, at *5 (E.D.N.Y. Feb. 9, 2016). "If a § 2254 petitioner has failed to present a claim to a state court but can no longer do so–for example, if the time to file a state-court appeal has passed–then that claim is considered procedurally barred rather than unexhausted." <u>Id.</u> (citing <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 848 (1999)); <u>Lloyd v. Walker</u>, 771 F. Supp. 570, 574 (E.D.N.Y. 1991) (noting that "[w]hen a petitioner has not properly presented his claim to a state for consideration on the merits, but it is clear that the state court would hold the claim procedurally barred, . . . the exhaustion requirement is satisfied," but, nonetheless, the petitioner is barred from litigating the merits of that claim in federal habeas proceedings) (internal quotation marks and citation omitted).

### 2. AEDPA Standard of Review

If a state court reached the merits of a claim, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable

> determination of the facts in light of the evidence presented in the State court proceeding.

28 U.SC. § 2254(d).  The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to]' and 'unreasonable.'" Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000).

A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring).  A decision involves an "unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. This standard does not require that all reasonable jurists agree that the state court was wrong. Id. at 409–10.  Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Jones, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'" Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 132 S. Ct. 490, 491 (2011) (per curiam)). This standard is "'difficult to meet,'" and for good reason. White v. Woodall, 134 S. Ct. 1697, 1702 (2014) (quoting Metrish v. Lancaster, 133 S. Ct. 1781, 1786 (2013)), reh'g denied, 134 S. Ct. 2835 (2014).  A petitioner must show that the "state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 1702.

Furthermore, a state court's determinations of factual issues are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and

10

convincing evidence." 28 U.S.C. § 2254(e)(1); see also Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006). A state court's findings of fact will be upheld "'unless objectively unreasonable in light of the evidence presented in the state court proceeding.'" Lynn, 443 F.3d at 246–47 (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). Thus, a federal court may overrule a state court's judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." Williams, 529 U.S. at 389.

### 3. Petitioner's Argument Regarding Second Degree Manslaughter

In his appellate brief, which he adopts by reference in his instant petition, Petitioner argued that "there was more than one reasonable view of the evidence, viewed in the light most favorable to appellant, that was consistent with a reckless homicide rather than with an intentional killing (second-degree murder) or a homicide while intending to cause physical injury (first-degree manslaughter)." (ECF No. 1 at 12-13.) In particular, Petitioner raises various arguments as purported support for his claim that he lacked the requisite intent for murder, such as that his mental state was unclear based on the evidence, that the police finding Petitioner, Ms. Valentine, and Mr. White "in a heap at the bottom of a stairway fails to prove how the fatal blow was struck," and that the stabbing may have resulted from Petitioner's reckless handling of the knife. (Id.) Thus, he contends, the trial court should have submitted a second-degree manslaughter charge to the jury.

At trial, Petitioner's counsel had made this request and argued that the court should charge second-degree manslaughter, in addition to first-degree manslaughter, as a lesser included offense of second-degree murder. (Tr. 156.) The trial court, however, denied the request, concluding that "[t]he Court will not charge reckless manslaughter because, in the Court's view, there is no reasonable view of the evidence that would lead one to conclude or find that there was recklessness regarding the death of the decedent in this case." (Tr. 190.)

11

Petitioner challenged the trial court's denial of this request in his direct appeal in the Appellate Division.  The court ultimately rejected his argument, finding that "review of the defendant's challenge to the [Supreme] Court's refusal to charge manslaughter in the second degree as a lesser-included offense of murder in the second degree is foreclosed by the jury verdict finding him guilty of murder in the second degree, the crime alleged in the indictment, and its implicit rejection of the lesser-included offense of manslaughter in the first degree."  People v. Irizarry, 88 A.D.3d 1013, 1014 (2d Dep't 2011) (quoting People v Gorham, 72 A.D.3d 1108, 1109 (2010)).

"Neither the Supreme Court nor [the Second Circuit] has decided whether the failure to instruct the jury on lesser included offenses in noncapital cases is a constitutional issue that may be considered on a habeas petition."  Knapp v. Leonardo, 46 F.3d 170, 179 (2d Cir. 1995); see also Sostre v. Lee, No. 11-CV-3439, 2013 WL 3756474 at *7 (E.D.N.Y. July 15, 2013) (holding that a trial court's refusal to charge a lesser included offense is not cognizable under 28 U.S.C. § 2254(d)(1)).

Given the unsettled nature of federal law in this area, a claim that a state trial court erred in failing to instruct the jury on a lesser included offense in a non-capital case, like Petitioner's, is not cognizable in a habeas corpus proceeding.  See Bonilla v. Lee, 35 F. Supp. 3d 551, 569 (S.D.N.Y. 2014) (citing Jones v. Hoffman, 86 F.3d 46, 48 (2d Cir. 1996), and finding that because a habeas petition cannot be used to apply a new rule of law, a claim for failure to include a lesser included offense in a noncapital case is precluded from habeas review); see also Alvarado Ajcuc v. New York, No. 18-CV-183, 2019 WL 3409515 (E.D.N.Y. July 29, 2019); Conroy v. Racette, No. 14-CV-5832, 2017 WL 2881137, at *1 (E.D.N.Y. July 6, 2017).

Accordingly, Petitioner's claim regarding the lesser included offense is denied as it cannot form a basis for habeas relief.

### 4. Ineffective Assistance of Counsel

Petitioner next argues that his trial counsel was ineffective. In his pro se brief submitted to the trial court pursuant to N.Y. C.P.L. §440.10—which he adopts by reference in his habeas petition—Petitioner argued that he received ineffective assistance of counsel at trial because first, his attorney entered into a stipulation regarding a DNA report and second, did not object to how the trial court responded to a note from the jury. (ECF No. 1 at 63.) The trial court squarely rejected these arguments in denying his 440 motion, finding them procedurally barred, because he failed to raise them in his direct appeal, and meritless, because they were belied by the record. (Id. at 80.)

As an initial matter, the Court finds that Petitioner's ineffective assistance of counsel claim is procedurally barred for two reasons. First, as the trial court found, Petitioner failed to raise these arguments on direct appeal without justification. (ECF No. 1 at 85.) A court must deny a motion to vacate where "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's . . . unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him." See N.Y. Crim. Proc. Law § 440.10 (2)(c); see also Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001) ("New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal"). The Appellate Division relied on this independent and adequate ground of state law to deny Petitioner's claim. Accordingly, the procedural bar applies to this claim.

Additionally, there is another reason why Petitioner's ineffective assistance claim is procedurally barred—namely, the record contains no indication Petitioner sought to appeal the trial court's denial of his § 440 motion when he had thirty days to do so. See CPL § 460.10(4)(a) (providing thirty days to seek leave to appeal). The Court cannot grant Petitioner's

13

habeas petition "unless it appears that the applicant has exhausted the remedies available in the courts of the State; or that there is either an absence of available State corrective process; or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C.§ 2254(b)(1).  As here, "when 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted." Aparicio, 269 F.3d at 90 (quoting Coleman 501 U.S. at 735 n.1).  When a "petitioner has no available state forum in which to pursue a remedy because of a state procedural bar, his claim may be deemed exhausted, yet procedurally barred." Ricco v. Burge, No. 6-CV-4902, 2009 WL 4341521, at *15 (S.D.N.Y. Dec. 2, 2009).  Petitioner's failure to appeal the denial of his 440.10 motion renders the claims raised therein to be deemed exhausted and procedurally barred.  See LaRosa v. Kirkpatrick, No. 15-CV-7008, 2019 WL 1458252, at *12 (E.D.N.Y. Mar. 31, 2019).

To overcome these two procedural bars, Petitioner must "demonstrate cause and prejudice for the default or that failure to consider it would result in a miscarriage of justice." McPherson v. Keyser, No. 15-CV-1250, 2019 WL 6050279, at *10 (E.D.N.Y. Nov. 15, 2019).  Here, Petitioner has not established cause and prejudice or actual innocence.  The Court, therefore, finds that Petitioner's ineffective assistance claim must be dismissed as procedurally barred.

Nevertheless, even if Petitioner's ineffective assistance claims were not procedurally barred, those claims are clearly meritless.  These ineffective assistance arguments concern DNA testing performed on the knife recovered from the crime scene.  Testing on the blood by the Office of the Chief Medical Examiner revealed DNA from two males:  Mr. White and an unknown male. Petitioner's counsel initially sought to call a lab witness or expert to testify at trial regarding these

14

DNA test results. Ultimately, however, he agreed to a stipulation with the prosecution and withdrew his application. The stipulation stated:

> that were a DNA expert called to testify, who did a DNA analysis of the blood found on the blade of the knife, that expert would have testified and in testifying would have stated the same findings and conclusions that are encompassed in the expert's report. So this laboratory report is going into evidence, and you will have the right to view it and read it and consider it as part of evidence and give it whatever weight you believe it deserves.

(Tr. 193-94.)

In his summation, defense counsel relied heavily on this stipulation. He encouraged the jury to take the DNA report "in the jury room and read it. It's going to tell you that Mr. White's DNA is on there and the DNA of another male. Not Pedro Irizarry, another male." (Tr. 205.) Counsel's summation also questioned the investigative techniques used and those that the investigators failed to employ. He stated that "[i]f somebody wanted to come take [Petitioner's] blood or take more fingerprints from him or do anything of the sort, they could have." (Id.)

Petitioner's second argument in support of his ineffective assistance claims also relates to the DNA report. In particular, he challenges how his counsel reacted to the trial court's handling of a jury note that mentioned the DNA report. Specifically, during deliberations, the jury sent the judge a note that stated: "May we please see the DNA report, photographs, the time and place the arrest photo was taken and the police report." (Tr. 254.) The judge read the note in open court and sought clarification as to the "police report" requested. (Tr. 255-56.) Following a sidebar, the court instructed the jury that no police report was in evidence, but that the DNA report was. (Tr. 256.)

In his 440 motion, which he adopts by reference here, Petitioner argued that his trial counsel was ineffective for two reasons. First, that he stipulated to the admission of the DNA report without calling a witness, and second, that he failed to object to how the trial court responded to the jury's note. To prevail on an ineffective assistance of counsel claim, Petitioner must show

15

that his trial counsel's performance was so inadequate that his Sixth Amendment right to counsel was violated. See Strickland v. Washington, 466 U.S. 668, 689–90 (1984). Therefore, he must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 688, 693).

First, Petitioner must demonstrate that "'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.'" Wilson v. Mazzuca, 570 F.3d 490, 502 (2d Cir. 2009) (quoting Strickland, 466 U.S. at 687). Then, he must show that he was prejudiced by said deficient performance, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Rosario v. Ercole, 601 F.3d 118, 123 (2d Cir. 2010) (internal quotation marks and citation omitted). Additionally, under AEDPA, federal courts must grant state courts substantial "deference and latitude" when considering claims for ineffective assistance of counsel already rejected at the state court level. Harrington v. Richter, 562 U.S. 86, 101 (2011).

Here, Petitioner has not demonstrated that his trial counsel was ineffective with respect to either the stipulation or juror note. First, the Court notes that the stipulation his counsel negotiated regarding the DNA evidence was favorable to Petitioner. The stipulation explained to the jury that an unknown male's DNA was on the knife handle. Relying on the stipulation in his summation, defense counsel argued that the prosecution lacked any DNA evidence to connect Petitioner to the murder weapon. Therefore, he claimed, the jury could not find him guilty beyond a reasonable doubt since the only eyewitness testimony presented to them was from Ms. Valentine, who he described as unreliable and not credible. (Tr. 204-05.)

Petitioner, however, takes issue with his counsel's reliance on the stipulation and failure to call any witnesses regarding the DNA testing, such as a laboratory analyst. He accuses counsel of violating his confrontation clause rights by failing to call the witness who would have introduced the DNA report into evidence. It is well-settled, however, that actions or omissions by counsel that "'might be considered sound trial strategy'" do not constitute ineffective assistance. Strickland, 466 U.S. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). The decision of Petitioner's trial counsel to forgo calling certain witnesses falls into this category. See U.S. v. Best, 219 F.3d 192, 201–02 (2d Cir. 2000) ("[C]ounsel's decision as to whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation.") (internal quotation marks and citation omitted); see also United States v. Smith, 198 F.3d 377, 386 (2d Cir. 1999) ("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial.") (internal quotation marks and citation omitted).

At trial, counsel made a strategic decision to rely on the stipulation instead of calling witnesses to show that the test did not reveal Petitioner's DNA on the knife. The Court does not find this strategic decision to be ineffective assistance, and therefore it is not a ground for habeas relief. Furthermore, based on the evidence before the Court, Petitioner cannot show that he was prejudiced by defense counsel's decision to rely on the stipulation rather than witness testimony to establish this point. There is not a reasonable probability that if counsel had called a witness to establish this point, the result of the proceeding would have been different.[3]

---

[3] Even assuming, arguendo, that Petitioner is also asserting in his papers that defense counsel was ineffective for introducing any of the DNA evidence (whether through the report itself or through a live witness), such a claim would also fail. There were both exculpatory and inculpatory aspects to the DNA evidence, and defense counsel's strategic decision to introduce the DNA evidence and to rely on it as support for the arguments he advanced at trial was a

17

Petitioner's argument based on his counsel's response to the jurors' note is likewise meritless. Petitioner argues that his trial counsel purportedly failed to object to the trial court's alleged mishandling of the juror note. Because the trial court properly handled the juror's note, counsel had no basis to object. Contrary to Petitioner's assertion, the note was properly marked as an exhibit. In addition, the trial court reconvened the jury in the presence of the parties, read the jury's note into the record, and then conferred with counsel at sidebar as to how to respond. Since there is no basis to find that the trial court acted inappropriately, counsel rightly did not object. Accordingly, Petitioner's argument that he received ineffective assistance of counsel because his attorney failed to object to the court's handling of the note is meritless.

### III.    CONCLUSION

Petitioner's petition is hereby **DENIED** for the reasons set forth above. A certificate of appealability shall not issue because Petitioner has not made a substantial showing that he was denied any constitutional rights. See 28 U.S.C. § 2253(c)(2).

I certify that any appeal of this Order would not be taken in good faith, and thus in forma pauperis status is denied for the purposes of any appeal. Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Clerk of the Court is respectfully directed to mail a copy of this Order to Petitioner at his last known address and to close the case.

**SO ORDERED.**

Dated:  August 31, 2021
         Central Islip, New York

                                                        /s/ (JMA)
                                                    JOAN M. AZRACK
                                                    UNITED STATES DISTRICT JUDGE

---

reasonable trial strategy. Moreover, there is not a reasonable probability that the outcome would have been different even if no DNA evidence had been introduced.